IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JERRY L. ANGELO,

    Plaintiff,

  vs.                                    Civil Action 2:11-cv-362
                                            Judge Marbley
                                            Magistrate Judge King

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

        This is an action instituted under the provisions of 42 U.S.C. §405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits.  This matter is now before the Court on plaintiff's *Statement of Specific Errors*, Doc. No. 16, the Commissioner's *Memorandum in Opposition*, Doc. No. 22, and plaintiff's *Reply*, Doc. No. 23.

**Background and Administrative Decision**

        Plaintiff Jerry L. Angelo was born in 1958.  He has a ninth grade education and prior relevant work experience as a maintenance man, delivery person, mechanic and press operator. Plaintiff originally filed his application for benefits on September 13, 2002 alleging that he has been disabled since April 15 of that year.  After final administrative proceedings, this Court reversed the decision of the Commissioner denying benefits and remanded the matter for further consideration of plaintiff's obesity in light of Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002). *Angelo v. Commissioner*

*of Social Security*, 2:07-cv-796 (S.D. Ohio August 22, 2008).

On April 14, 2009, a supplemental administrative hearing was held at which plaintiff, represented by counsel, appeared and again testified, as did a medical expert and a vocational expert.  In a decision issued June 1, 2009, the administrative law judge found that plaintiff suffers severe physical and mental impairments but that those impairments neither meet nor equal a listed impairment.  In this regard, the administrative law judge specifically found that plaintiff's cognitive functioning does not satisfy Listing 12.05C, which addresses mental retardation.  The administrative law judge found that plaintiff has the residual functional capacity for sedentary exertion, with certain environmental restrictions; from a mental standpoint, plaintiff was only mildly impaired in his ability to relate to others, understand, remember and follow instructions, maintain attention, concentration, persistence and pace to perform simple repetitive tasks and withstand the stress and pressure associated with day-to-day work activities.  A.R. 827.  Relying on the testimony of the vocational expert, the administrative law judge found that this residual functional capacity permitted the performance by plaintiff of work that exists in significant numbers in the national economy.  Accordingly, the administrative law judge concluded that plaintiff was not, at any time prior to the lapse of his insured status, disabled within the meaning of the Social Security Act.  A.R. 836.

In his *Statement of Errors*, plaintiff challenges only the Commissioner's determination that plaintiff's cognitive functioning does not render him disabled. The Court will therefore summarize only that evidence relevant to that contention.

**Standards**

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human Servs*., 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.,* 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth,* 402 F.3d at 595.

Listing 12.05 requires, under appropriate circumstances, a finding of disability based on the claimant's mental retardation:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder

>is met when . . .
>(C) [The claimant has demonstrated] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05(C).  A claimant must establish three elements in order to satisfy Listing 12.05C: that he experiences "significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period" (i.e., the diagnostic description); (2)that he has a "valid verbal, performance, or full scale IQ of 60 through 70;" and (3) that he suffers from "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.*  *See also Foster v. Harris,* 279 F.3d 348, 354-55(6th Cir. 2001). Under the Social Security regulations, "loss of adaptive functioning" is "manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P., App. 1 §12.00C4. *See also West v. Comm'r Social Sec. Admin.*, 240 Fed. Appx. 692, 698 (6th Cir. 2007)("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills"). Present IQ scores do not alone establish that the claimant suffered subaverage intellectual functioning or deficits in adaptive functioning during the developmental period.  "A claimant must produce evidence beyond his present IQ scores to show that he exhibited deficits during his developmental period." *Turner v. Comm'r of Soc. Sec.*, 381 Fed. Appx. 488, 491-92 (6th Cir. 2010), citing Foster, 279

4

F.3d at 354-55.

**Evidence and Discussion**

In April 2003, James Spindler, M.S., performed a consultative examination of plaintiff at the request of the state agency.  On clinical examination, plaintiff appeared to perform in the borderline range of intelligence.  A.R. 299.  On the WAIS -III, however, plaintiff achieved a verbal IQ score of 66, a performance IQ score of 74 and a full scale IQ score of 66, which place him in the mild mental retardation range.  A.R. 300.  On the WRAT-III (Reading) test, plaintiff read at the 3rd garde level.  Mr. Spindler diagnosed, *inter alia*, borderline intellectual functioning,  A.R. 301, and opined that plaintiff was mildly impaired in work-related areas.  A.R. 301-02.

In July 2007, and again in August 2007, Joan Williams, Ph.D., a state agency psychologist, reviewed the record and concluded that plaintiff's mental impairments neither met nor equaled Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders). A.R. 958, 965. The psychologist did not, apparently, consider List 12.05.  *Id.*  That assessment was affirmed in January 2008 by Caroline Lewin, Ph. D., another reviewing psychologist.

In June 2008, Gary Wolfgang, Ph.D., performed a consultative psychological evaluation of plaintiff.  On the WAIS-III, plaintiff achieved a verbal IQ score of 56, a performance IQ score of 56 and a full scale IQ score of 52, placing him in the moderate range of mental retardation.  A.R. 1041.  Other index scores placed plaintiff in the mild range of mental retardation.  *Id*.  Plaintiff's performance on the WRAT-4 also fell within the mild mental retardation range.  A.R. 1043. Based on plaintiff's reported history, Dr. Wolfgang concluded that plaintiff's adaptive functioning was higher than moderate mental

retardation. According to Dr. Wolfgang, plaintiff demonstrated limitations consistent with mild mental retardation, a result that could be explained by the presence of a mood disorder or malingering, although the latter explanation was unlikely in light of the consistency of plaintiff's test results. *Id*. Dr. Wolfgang suggested that plaintiff's school records, if still available, be obtained. Without those records, Dr. Wolfgang offered mild mental retardation as only a provisional diagnosis.

In an assessment of plaintiff's mental residual functional capacity, Dr. Wolfgang indicated that plaintiff was markedly limited in a number of work-related areas, including in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and ability to interact appropriately with the general public and to get along with co-workers. A.R. 1045. According to Dr. Wolfgang, plaintiff was "unemployable." A.R. 1046.

Asked at the supplemental hearing to assume the limitations found by Dr. Wolfgang, the vocational expert testified that those limitations would preclude the performance of jobs identified by him as otherwise available to a claimant with plaintiff's vocational profile. A.R. 1279.

Plaintiff's school records from 8th and 9th grade were thereafter located. A.R. 937-38. Those records reflect grades of Cs, Ds and an F; there is no indication that plaintiff was assigned to special education classes. Although the photocopy of test results is unclear, it appears that, on aptitude testing, plaintiff achieved a verbal IQ score of 72, a performance IQ score of 70 and a full scale IQ score of 71. A.R. 938. At the supplemental administrative hearing, the administrative law judge read this record as reflecting "IQs in the 70s." A.R. 1282.

6

In her decision, however, the administrative law judge characterized plaintiff's cognitive impairment as borderline intellectual functioning.  A.R. 819.  Although she recognized the apparently qualifying IQ scores on the tests administered by Dr. Wolfgang and Mr. Spindler, the administrative law judge found no evidence of an onset of intellectual impairment or adaptive deficits before age 22.  In this regard, the administrative law judge was not persuaded by plaintiff's school records:

> The first page lists the claimant's grades for seventh, eighth and ninth grades.  While these grades are low, they could be low for a number of reasons and not due to any intellectual impairment.  The second page lists extracurricular activities the claimant was involved in, as well as scores of aptitude tests.  However, the typed print is faded and thus unclear regarding the type of aptitude tests, the claimant's scores, and how he ranked among peers.  Thus, such evidence does not support a finding that the claimant had a severe intellectual impairment before age 22.

A.R. 826.  Furthermore, the administrative law judge found that plaintiff's activities and work history did not support a finding of onset during the developmental period.  *Id*.

The administrative law judge went on to find that, from a mental standpoint, plaintiff was only mildly impaired in his ability to engage in work-related functions.  A.R. 827.  In making this finding, the administrative law judge relied on the opinions of the state agency reviewing psychologists and Mr. Spindler.[1]  The administrative law judge discussed Dr. Wolfgang's assessment as follows:

> On the [IQ test] scores alone, Dr. Wolfgang diagnosed the claimant with mild mental

---

[1] The administrative law judge erroneously refers throughout the administrative decision to Mr. Spindler as "Dr."

7

> retardation. However, he added that it was only
> a provisional diagnosis because of the absence of
> contradictory findings (such as the claimant's
> school records). He also added that it was
> possible that the claimant's scores were low
> because he was malingering. Thus, Dr. Wolfgang's
> diagnosis was not a concrete diagnosis of mental
> retardation, nor were the claimant's scores
> substantiated by other objective evidence.

A.R. 832. The administrative law judge made no mention whatsoever of Dr. Wolfgang's assessment of plaintiff's mental residual functional capacity, A.R. 1045, in which Dr. Wolfgang expressed his opinion that plaintiff was "markedly" impaired in a number of work-related areas of functioning.

     This Court concludes that the administrative law judge's assessment of plaintiff's cognitive functioning is not supported by substantial evidence. The administrative law judge rejected the apparently qualifying IQ scores on tests administered by Dr. Wolfgang and Mr. Spindler, in part, because they were not corroborated by plaintiff's school records which, although apparently legible to the administrative law judge at the hearing, were later determined by her to be illegible.[2] Of more significance is the administrative law judge's complete failure to evaluate – or indeed even acknowledge – Dr. Wolfgang's assessment of plaintiff's mental residual functional capacity. An administrative law judge is obligated to consider and weigh all the medical evidence. 20 C.F.R. §404.1527(d). Her failure to do so in connection with Dr. Wolfgang's assessment cannot be overlooked, because the vocational expert testified that the

---

[2]The numbers entered on plaintiff's records are legible; it is only the preprinted form language that is difficult to read. The Court assumes, perhaps incorrectly, that school test records from the relevant era were relatively standardized. If so, it might be that an expert familiar with school records from that era could assist the administrative law judge in making sense of the information contained in those records.

limitations noted by Dr. Wolfgang in that assessment would be work preclusive.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded for further consideration of plaintiff's cognitive functioning.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation.*  *See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,*  638 F.2d 947 (6th Cir. 1981).

                                               *s/Norah McCann King*
                                               Norah M$^c$Cann King
                               United States Magistrate Judge

July 31, 2012

Date